FILED
at___O'clock &___min___M

OCT 26 2007

United States Bankruptcy Court
Columbia, South Carolina (6)

ENTERED
OCT 2 6 2007
J.G.S.

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| IN RE:<br><br>Rhonda Karen Barnes,<br><br>Debtor. | C/A No. 07-03263-JW<br><br>Chapter 13<br><br>**ORDER** |
|---|---|

This matter comes before the Court upon Chapter 13 Trustee William K. Stephenson, Jr.'s ("Trustee") objection to confirmation of Debtor's chapter 13 plan. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O). Pursuant to Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT

1.  Rhonda Karen Barnes ("Debtor") filed a petition for relief under chapter 13 of the Bankruptcy Code on June 19, 2007.

2.  Debtor is married but her spouse is not a debtor in this case.

3.  Debtor and her non-filing husband are above the median income for the State of South Carolina.

4.  With her petition, Debtor filed Official Form B22C, Debtor's Statement of Current Monthly Income, which is a calculation of "disposable income"[2] under the means test. This form indicates that she has no "disposable income" (a negative $299.86 per month) available to pay unsecured creditors.

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

[2] For the reasons stated in Edmunds, this Court does not believe that "disposable income" and "projected disposable income" are synonymous. See Edmunds, 350 B.R. 636, 643-644 (Bankr. D.S.C. 2006).

5.    On August 23, 2007, Debtor filed an amended chapter 13 plan ("Plan"). The Plan proposes to pay creditors a total of $64,500.00 over a period of 60 months through the Trustee.[3]

6.    The distribution to unsecured creditors appears to be approximately $292.79 per month based upon Debtor's total obligation under the Plan less the Plan's required payments to secured creditors and the Trustee's administrative fee.[4] Under the Plan, unsecured creditors would receive less than a one-hundred (100%) percent distribution on their claims, as scheduled.

7.    Trustee opposes confirmation of the Plan pursuant to 11 U.S.C. § 1325(b). Trustee contends that Debtor incorrectly calculated her income and expenses on her Statement of Current Monthly Income by failing to include as income a bonus of $6,000.00 received by Debtor's non-filing spouse within the six month period prior to the petition date and because Debtor's telecommunication expenses should be adjusted from $310.00 per month to $140.00 per month.[5]

8.    Debtor testified at the confirmation hearing that her actual telecommunication expenses are approximately $220.00 per month. Debtor further testified that the amount of her husband's bonus is uncertain since it is tied to the profitability of the particular construction jobs performed by the husband during the year and that she would not likely receive any portion of the bonus since she and her husband maintain separate accounts and since he has separate non-household expenses. No evidence was presented on how Debtor's husband specifically used the bonus money paid within the six month period prior to the petition date.

---

[3]    Though the Plan proposes $1,036.00 per month, it appears that the Plan requires Debtor to actually pay $1,075.00 per month to meet Debtor's base obligation of not less than $64,500.00 proposed by the Plan.
[4]    In this case, Debtor's total obligation under the Plan equals $64,500.00. This sum less $23,000.00 in secured payments to GMAC, $20,126.87 in secured payments to BMW Bank of North America, and an $3,805.50 to the Trustee leaves approximately $17,567.63 for unsecured creditors which averages out to $292.79 per month for 60 months.
[5]    It appears that the parties mutually resolved other issues related to Debtor's calculation of income and expenses.

2

9.      Following the hearing, for clarification purposes, the parties jointly submitted a revised Statement of Current Monthly Income that contains the changes requested by the Trustee, as well as other adjustments to Debtor's income and expenses mutually agreed to by the parties. As revised, this Form B22C calculates Debtor's disposable income at $820.49 per month, which includes Trustee's proposed allowance of $140.00 per month for telecommunication expenses and an income increase of $500.00 per month to account for Debtor's husband's pre-petition bonus.

10.     Debtor contends that this $820.49 per month should be reduced by $80.00, to allow for her total actual telecommunication expenses, and reduced by $500.00 per month under the contention that the husband's bonus is not Debtor's income and should not be included in the calculation of her projected disposable income. With Debtor's proposed reductions, her "disposable income," calculated on Form B22C, would be $240.49 per month and it would appear that Debtor's current Plan is sufficient to meet this required payment to unsecured creditors.

11.     If the Court sustains Trustee's position, it appears that Debtor's plan payment would need to be increased from $1,075.00 per month to approximately $1,602.70 per month.[6]

12.     Debtor's Schedule J indicates that she has $1,074.06 per month to make her proposed plan payment.

## CONCLUSIONS OF LAW

11 U.S.C. § 1325(b)(1) requires Debtor to devote all of her "projected disposable income"[7] to be received during her applicable commitment period of five years. See Edmunds,

---

[6] This increase of $527.70 is due to the difference between Trustee's proposed distribution of $820.47 per month to unsecured creditors compared with the Plan's currently proposed distribution of approximately $292.79 per month.

350 B.R. 636, 643-644 (Bankr. D.S.C. 2006). As revised, 11 U.S.C. § 1325(b) has confused parties and divided courts within this Circuit as to what is required of a debtor in a chapter 13. Compare In re Barr, 341 B.R. 181 (Bankr. M.D.N.C. 2006) with In re McPherson, 350 B.R. 38 (Bankr. W.D. Va. 2006). In interpreting the statute, this Court does not believe the strict mechanical application of the means test necessarily satisfies a debtor's duties under 11 U.S.C. § 1325(b) or constrains a debtor to propose a plan that is otherwise unfeasible. See Edmunds, 350 B.R. at 647, fn. 15. The burden of proof for an objection under 11 U.S.C. § 1325(b) is a shifting burden where the Trustee, in this instance, is initially required to produce satisfactory evidence that Debtor is not devoting her "projected disposable income" to her Plan and, once this burden is met, the burden shifts to Debtor to demonstrate, by a preponderance of the evidence, compliance with 11 U.S.C. § 1325(b). See In re McGilberry, 298 B.R. 258, 260 (Bankr. M.D. Pa. 2003); In re Williams, C/A No. 97-08824-W, slip op. 1998 WL 2016786 (Bankr. D.S.C. Jan. 13, 1998) (noting that a debtor bears the ultimate burden of proof for confirmation of a chapter 13 plan).

Two post-Reform Act cases, consistent with Edmunds, have found that a debtor's annual post-petition bonus should be devoted to a chapter 13 plan as "projected disposable income" regardless of whether the bonus is captured in the calculation of "current monthly income."[8] See In re Arsenault, 370 B.R. 845 (Bankr. M.D.Fla. 2007) In re Foster, 2006 WL 2621080 (Bankr. N.D. Ind. Sept. 11, 2006). However, the facts in this case involve the income of a non-debtor spouse and thus the Court must further examine 11 U.S.C. § 1325(b) to determine whether

---

[7] "Projected disposable income" is not a defined term but has previously been interpreted by this and other courts. See Edmunds, 650 B.R. at 643-644.

[8] "Current monthly income" is defined by 11 U.S.C. § 101(10A). The term captures a debtor's average income for the six month period prior to the petition date. For the reasons stated in Edmunds, the mathematical average of pre-petition income does not necessarily equate to the determination of the income portion of "projected disposable income" as the term is used in 11 U.S.C. § 1325(b). See Edmunds, 350 B.R. at 646-647.

Debtor's non-filing spouse's income, in this case a potential annual bonus, should be considered in calculating "projected disposable income," as the term has been interpreted by this Court in Edmunds. In addition, the Court must determine whether Debtor's telecommunication expenses are reasonable.

11 U.S.C. § 1325(b)(2) instructs how projected disposable income is to be calculated in that it defines income and allowed expenses. See Edmunds, 350 B.R. at 646, fn 15. 11 U.S.C. § 101(10A) describes the sources of revenue that constitute income and those that do not for purposes of 11 U.S.C. § 1325(b)(2) although 11 U.S.C. § 101(10A) does not clearly establish the relevant time frame for determining the income component of "projected disposable income" in a chapter 13 case. See id. at 646-647; In re Hardacre, 338 B.R. 718, 723 (Bankr. N.D. Tex. 2006). With some specified exclusions not applicable in this case, 11 U.S.C. § 101(10A) defines and divides a debtor's sources of "income" into the following two categories: (A) monthly income from "all sources that the debtor receives (or in a joint case the debtor and debtor's spouse receive) without regard to whether such income is taxable" and (B) "any amount paid by an entity other than debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent)...." The use of parenthetical phases in 11 U.S.C. § 101(10A) implies that the income of a non-filing spouse is not included for purposes of determining a debtor's projected disposable income under 11 U.S.C. § 1325(b) if a debtor does not "receive" this income pursuant to 11 U.S.C. § 101(10A)(A). However, 11 U.S.C. § 101(10A)(B) indicates that a non-filing spouse's income is included, regardless of a debtor's receipt of such income, if the income is paid on a "regular basis" for debtor's "household

5

expenses."[9] In re Quartermann, 342 B.R. 647, 651 (Bankr. M.D. Fla. 2006); In re Hall, 2007 WL 445517, *3 (Bankr. C.D. Ill. Feb. 12, 2007). Through this definition "Congress chose to exclude that portion of the non-filing spouse's income devoted to personal pursuits or expenses from current monthly income." In re Baldino, 369 B.R. 858, 862 (Bankr. M.D. Pa. 2007).

Initially, there is no evidence that Debtor "received" the bonus. Debtor testified that she did not receive the bonus, that she and her husband maintain separate checking accounts, and that her husband uses a portion of his income for debt that is solely in his name. There is no evidence that Debtor has access to her husband's separate account or that he otherwise transferred the bonus to her. Therefore the Court cannot find, under the facts of this case, that Debtor receives or will receive her husband's bonus, thus excluding the same as income under 11 U.S.C. § 101(10A)(A).

Although the bonus may not be received by Debtor under 11 U.S.C. § 101(10A)(A), it may nevertheless be income of Debtor, for purposes of the Plan, if it is paid on a regular basis for Debtor's household expenses. See 11 U.S.C. § 101(10A)(B). Debtor's Schedule J reveals that her husband pays for the following expenses that are specific to him: a credit card expense in the husband's name, meal expenses while at work, and the clothing and child support expenses for the husband's children by another marriage. These expenses total $587.00 per month[10] on Schedule J and, based upon Debtor's schedules, testimony, and Statement of Current Monthly Income, it appears that these expenses are paid from the husband's regular monthly wages. However, since it appears that Debtor's husband has sufficient monthly income to meet his

---

[9] Form B22C's line 19 provides debtors a place to deduct the income of a non-filing spouse if such income is not contributed to household expenses on a regular basis. See In re Shahan, 367 B.R. 732, 737 (Bankr. D. Kan. 2007).

[10] However, on line 19 of Form B22C, Debtor quantifies these non-household expenses at only $377.67 per month.

6

separate expenses, the burden shifts to Debtor to demonstrate, by a preponderance of the evidence, that the bonus is not paid on a regular basis for her household expenses.

Debtor did not present any testimony about how the bonus was specifically used and therefore the Court finds that such a bonus could effectively be used to pay for Debtor's household expenses. See Foster, 2006 WL 2621080, at *8 (concluding a bonus was used to pay for household expenses absent evidence to the contrary). Next the Court must consider whether the bonus can be considered to be paid on a regular basis. Though the amount of future bonuses is unknown and somewhat speculative given the husband's brief work history with his current employer and the conditions of the bonus, it appears from Debtor's testimony that her husband may be annually entitled to a bonus, in some amount, if these conditions are met. While capturing the bonus in the Plan payment at this time would appear to be fatal to the Plan since Debtor does not have sufficient actual disposable income to increase her Plan payments, if paid in the future, the bonus should be captured in Debtor's plan payment absent evidence that the bonus is necessary for the husband's non-household expenses. Therefore, the Court sustains Trustee's objection on this issue and finds any future bonus should be devoted to the Plan pursuant to the terms of this Order.

Finally, with regard to Debtor's expenses, Debtor is allowed certain "applicable" expenses and certain other expenses that are actual, reasonable, and necessary. See Edmunds, 350 B.R. at 644-645. Debtor's telecommunication expense is an expense that must be actual, reasonable, and necessary. See In re Ballard, 07-03203-W, slip op. at 6-7 (Bankr. D.S.C. Sept. 13, 2007). The Court finds that Debtor has presented sufficient evidence to sustain her expense of $220.00 per month for telecommunications. Though Debtor could possibly obtain some of her telecommunication services for less money, her expense of $220.00 per month for cable,

internet, and telephone services is not so out of the ordinary to make the expense unreasonable. See id. Therefore, the Court overrules the Trustee on this issue.

Based upon the foregoing, the Trustee's objection to confirmation is sustained in part. Debtor shall provide the Trustee with written notice of her husband's annual bonus within ten (10) days after the bonus is received by her or her husband. The bonus shall be remitted to the Trustee within twenty (20) days of its receipt absent motion by Debtor that the bonus is necessary for her husband's non-household expenses.[11] If such a motion is made, Debtor and her husband shall hold the bonus in trust pending resolution of her motion. Failure to report or remit the bonus, pursuant to the terms of this Order, may be grounds to dismiss this case. The bonus shall not reduce Debtor's obligation under her chapter 13 plan but is in addition to Debtor's plan payments until such time as unsecured creditors are paid in full or Debtor's Plan is fully performed according to its terms. Debtor's Plan shall be confirmed by separate order, consistent with the terms and conditions of this Order, to be submitted by Trustee within ten (10) days from the entry of this Order.[12]

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina,
October 26, 2007

---

[11] The Trustee and Debtor may agree to a lesser amount than all of the bonus.
[12] Alternatively, Debtor may submit an amended plan within ten (10) days from the entry of this Order which is consistent with the terms of this Order.